Frances Summers, *Appellee*, v. State Highway Commission of Kansas, *Appellant*.

No. 39,754

Walter E. Summers, *Appellee*, v. State Highway Commission of Kansas, *Appellant*.

(284 P. 2d 632)

Opinion filed June 11, 1955.

Roy G. Lowe, of Topeka argued the cause, and *Wm. B. Kirkpatrick*, assistant attorney general, was with him on the brief for the appellant.

H. Newlin Reynolds, of Hutchinson, argued the cause, and *Roy C. Davis, Frank S. Hodge, Eugene A. White*, and *Robert Y. Jones*, all of Hutchinson, were with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: Frances Summers and her husband Walter E. Summers were injured in a single accident allegedly caused by a defect in a state highway. Each commenced an action against the State Highway Commission to recover damages. The commission's demurrers to their petitions were overruled and it has appealed. As the question for decision is common to both appeals, they have been consolidated, but in reviewing the allegations reference will be made only to the petition of Frances Summers.

In a preliminary way it may be stated that there is no controversy but that the plaintiffs' only rights to recover are under G. S. 1949, 68-419, which provides that:

"Any person who shall without contributing negligence on his part sustain damage by reason of any . . . defect in a state highway . . . may recover such damages from the state of Kansas . . ."

The commission presents two contentions: 1. That the facts alleged are not sufficient to show a defect in the highway; and 2. That the facts alleged show that plaintiff was guilty of negligence contributing to her injury and damage. In view of the contentions made, our review of the allegations of the petition is limited.

After setting forth the status of the parties and that Highway 61 is a part of the state highway system and under the jurisdiction of the highway commission, Frances Summers alleged that the highway ran between Langdon and Arlington in Reno county; that it was improved with a bituminous surface 26 feet in width and that at a particularly described place and continuing east for approximately 120 feet along the south side the highway was on August 2, 1952, and had been since about July 1, 1952, in a defective and dangerous condition in that the south edge of the surface had crumbled away and disintegrated leaving a jagged and uneven edge which continued east for about 120 feet; that at the west end the south half of the surface was about 13 feet in width; that the south edge had crumbled away about one foot for a distance of about 70 feet east, and then had crumbled further toward the center of the highway so that the south half of the surface was about 11 feet in width for a distance of 15 feet east and thereafter for a distance of about 25 feet east the south half of the surface was 12 feet in width. Although not alleged the inference is that to the east of the 25 feet the surface of the south half of the

highway was 13 feet. It was further alleged that on the south side of the 15-foot strip mentioned there was an "abrupt drop-off" of four to five inches from the surface to the roadbed to the south, and that there were no lights, signals or warning signs at or near the jagged south edge to warn users of the highway.

Stated in a shorter fashion, for a distance of 70 feet the south edge of the bituminous surface was crumbled a width of one foot; for the next 15 feet to the east, the surface had crumbled a width of two feet; for the next 25 feet to the east the surface had crumbled a width of one foot. In the 15-foot zone, the edge of the bituminous surface was four to five inches above the dirt to the south.

Plaintiff further alleged that at about 9:45 P. M. of August 2, 1952, she was riding in a 1938 Pontiac automobile driven eastwardly by her husband at a speed of 50 miles per hour; that the automobile was equipped with two lawful headlights which were lighted; that because of their character the defects in the highway were difficult to see and in the exercise of due diligence by the driver or by her could not be seen until they were immediately upon them; that the right wheels of the Pontiac automobile dropped into the dished-in 15 foot part of the highway; that the driver lost control of the automobile, which overturned causing her injuries which were set out. She also alleged that she had given notice of her claim to the director of highways as required by the above mentioned statute.

What constitutes a defect in a highway has been before this court on numerous occasions. Most of the cases are listed in annotations to the statutes. See G. S. 1949, 68-301 and the 1953 Supplement for cases where recovery was sought from a county or township, and see G. S. 1949, 68-419 and the 1953 Supplement for cases where recovery was sought from the state. A review of these cases would unduly extend this opinion and serve no particular purpose.

As the instant cases reach us on rulings on demurrers to the petitions, for present purposes the facts are admitted. We have repeatedly held, in such circumstances, that the state's liability, if any, is by reason of G. S. 1949, 68-419; that it has no liability under that statute unless by reason of a defect in a state highway, and that the question whether an alleged defect comes within the purview of that statute is a question of law. See *Sheen v. State Highway Commission,* 173 Kan. 491, 495, 249 P. 2d 934, and the cases cited

in support of the rule stated, as well as to the informative discussion therein.

In *Shafer v. State Highway Commission,* 168 Kan. 591, 215 P. 2d 172, it was said:

"There is no legal foot-rule by which to measure conditions generally and determine with exact precision whether a condition constitutes a defect. Some conditions may be so patently dangerous as to clearly constitute a defect while others may be so trifling as to be clearly outside the purview of the statute. (*Collins v. State Highway Comm.,* 134 Kan. 278, 283, 5 P. 2d 1106; *Douglas v. State Highway Comm.,* 142 Kan. 222, 226, 46 P. 2d 890.) It is, therefore, the policy of courts to handle each case separately and to either include it in or exclude it from the operation of the statute. (*Gorges v. State Highway Comm.,* 135 Kan. 371, 373, 10 P. 2d 834.) Where the circumstances are such that an alleged defect cannot be excluded from the operation of the statute as a matter of law it presents a case for a jury. (*Watson v. Parker Township,* 113 Kan. 130, 213 Pac. 1051; *Collins v. State Highway Comm.,* supra; *Cheney v. State Highway Comm.,* 142 Kan. 149, 153, 45 P. 2d 864.)" (l. c. 597)

The above statement was quoted approvingly in *Shafer v. State Highway Commission,* 169 Kan. 264, 219 P. 2d 448, and in *Sheen v. State Highway Commission,* supra, and is adopted here as a proper rule of decision.

We are aware that cases have been before us where there were holes and depressions in the portion of the highway a driver must use; where holes have been hidden or obscured because the grade of the road prevented their being seen, and other situations where it was held the condition complained of constituted a defect in the highway. For an example, see *Perry v. State Highway Commission,* 169 Kan. 382, 219 P. 2d 659, where it was alleged among other things that the bituminous surface was 18 feet wide, the highway was not level but traversed a rolling terrain and the alleged defect was six feet north of the center line and in the path of a westbound driver and consisted of a hole two feet wide, three feet long and eight to ten inches deep. In that case we affirmed the trial court's overruling a demurrer to the petition.

As indicated above we are without any foot-rule by which to determine whether a condition complained of constitutes a defect in a highway, and we must compare that condition with general conditions and surrounding circumstances. In so doing we cannot ignore the fact that there are hundreds of miles of highways with bituminous surface in this state and that it is a matter of common knowledge that such type of surfacing tends to feather off and crumble at the edges, especially where it may have been subjected

to heavy loads. We are aware also that there will be some deviations along the edge of such type of highway surfacing as contrasted to a concrete slab. We are aware also that with respect to bituminous surface a crumbling away of materials leaving an indentation in a highway is of much more consequence on a narrow highway where the effect is to put the indentation in the path of a motor vehicle being driven on that side of the highway than would be the case where the same size indentation was on the edge of a wide highway where the driver would have to be far to the right of the middle of the highway in order to strike it. And we are also aware that where there are rises and falls in the highway by reason of rolling terrain, an indentation might be so obscured as not to be discernible to a driver until too late to be avoided.

In the facts pleaded there is no allegation that the highway was not level and that the claimed defect was not discernible to any driver. The allegation is that the highway was 26 feet wide so that a driver had a 13-foot strip in which to drive on his own side of the road. The pleaded indentation lessened that width one foot for a distance of 70 feet and two feet for a further distance of 15 feet and at the narrowest place the driver had 11 feet, or substantially twice the width of a 1938 model automobile, on which to travel. Under the circumstances we think it must be held and we do hold that the indentation above described did not constitute a defect in the highway.

In view of what has been said it becomes unnecessary to discuss the contention of the commission that the allegations of the plaintiffs' petitions show they were guilty of negligence contributing to their injuries and damages.

The trial court erred in overruling the state highway commission's demurrers to the petitions. Those rulings are reversed and set aside and the causes are remanded to the trial court with instructions to sustain the demurrers.