No. 89,213

SHIRLEY LOPEZ, *Appellant*, v. UNIFIED GOVERNMENT OF WYANDOTTE COUNTY, KANSAS AND BOARD OF PUBLIC UTILITIES OF THE UNIFIED GOVERNMENT OF WYANDOTTE COUNTY, KANSAS, *Appellees*.

(89 P.3d 588)

Opinion filed May 14, 2004.

*Robert D. Kingsland*, Dempsey & Kingsland, P.C., of Kansas City, Missouri, argued the cause, and *Jason P. Osteen*, of the same firm, was on the brief for appellant.

*Robert J. McCully*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, argued the cause, and *Michael T. Jilka*, of the same firm, and *Marc Conklin*, of Kansas City, were with him on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Shirley Lopez was injured in a one-vehicle accident on a Kansas City, Kansas, street, which had become icy after a water main break. In her personal injury action against the Unified Government of Wyandotte County, Kansas, (Unified Government) and the Board of Public Utilities of the Unified Government of Wyandotte County, Kansas, (BPU), the district court granted summary judgment in favor of defendants on the ground that the "snow and ice" exception, K.S.A. 2003 Supp. 75-6104(l), to the general liability provisions of the Kansas Tort Claims Act (KTCA) applied. The Court of Appeals affirmed. *Lopez v. Unified Gov't of Wyandotte County*, 31 Kan. App. 2d 923, 75 P.3d 1234 (2003). The court granted Lopez' petition for review.

In the Court of Appeals, Lopez argued that Kansas courts traditionally have limited application of the snow and ice exception to naturally occurring weather conditions. In Lopez' view, both the presence of water and the low temperature to freeze it must be produced by nature in order for the statutory exception to apply.

Because the water main break was not a natural weather condition, according to Lopez' argument, the exception is inapplicable. Lopez would have the court read "due exclusively to natural elements" into the phrase "snow or ice conditions" in the statute.

The Court of Appeals rejected Lopez' argument, concluding that "once a naturally occurring weather condition has *a* role in developing a roadway hazard, courts must apply the snow and ice exception *'unless* the condition is affirmatively caused by the negligent act of the governmental entity.' K.S.A. 2002 Supp. 75-6104(l)." 31 Kan. App. 2d at 927. The Court of Appeals stated that its conclusion was compelled by its synthesis of the holdings of *Taylor v. Reno County*, 242 Kan. 307, 747 P.2d 100 (1987), and *Draskowich v. City of Kansas City*, 242 Kan. 734, 750 P.2d 411 (1988), cases that directly address the snow and ice exception.

As the Court of Appeals noted, the circumstances of this case fall between the naturally occurring icy conditions in *Taylor* and the defendants flooding the street in cold weather in *Draskowich*. Accordingly, the Court of Appeals held that the snow and ice exception applies when a naturally occurring weather condition has some role in creating a roadway hazard unless the condition is affirmatively caused by defendant's negligent act.

The Court of Appeals agreed with the district court that there was no evidence of such a negligent act in this case. As to the negligent omissions that comprised Lopez' allegations—failure to warn, barricade, or treat with sand or salt—the Court of Appeals found such failure was not equivalent to affirmative negligent acts.

Lopez also contends that the Court of Appeals failed to recognize a city's obligation to keep its streets reasonably safe. However, the language of 75-6104(l) undermines Lopez' reliance on the general obligation to keep public roadways reasonably safe because it addresses specific conditions rather than general circumstances. The plain language of the exception—"snow or ice conditions or other temporary or natural conditions on any public way or other public place due to weather conditions"—tends to support the Court of Appeals' construction rather than that advocated by Lopez in that natural conditions are stated in the disjunctive to snow or ice conditions. The "or's" in the exception indicate that any one of

the enumerated conditions would support immunity, and the inclusion of "natural conditions" suggests that conditions not entirely due to natural sources may have been contemplated in the legislature's phrasing. In addition, the meaningful scope of the statute's proviso, which would impose liability if ice conditions are affirmatively caused by the negligent act of a governmental entity, would be substantially narrowed if the statute were construed also to impose liability on a governmental entity if an icy condition were not from entirely natural sources, including some negligent omission on the entity's part. Lopez contends that limiting icy conditions to entirely natural ones does not "read" the proviso out of the statute because she can hypothesize occasions when a governmental entity might act affirmatively to exacerbate the danger of a natural accumulation of snow or ice. What we are concerned with, however, is the intent of the legislature. It seems unlikely that the legislature intended for governmental entities to be liable for negligent omissions relating to icy conditions when it expressed its intention to hold governmental entities liable only with regard to icy conditions affirmatively caused by their negligent acts. See K.S.A. 2003 Supp. 75-6104(l).

The KTCA establishes a general rule of liability. *Moran v. State,* 267 Kan. 583, 593, 985 P.2d 127 (1999). The Act also includes 25 specified exceptions to liability, K.S.A. 2003 Supp. 75-6104(a)-(y), and a catchall phrase: "The enumeration of exceptions to liability in this section shall not be construed to be exclusive." Lopez cites a case dealing with mortgage redemption statutes, *Broadhurst Foundation v. New Hope Baptist Society,* 194 Kan. 40, 44, 397 P.2d 360 (1964), for the proposition that doubt should be resolved against an exception. In its opinion, the Court of Appeals stated the related principle that, because immunity is the exception, the burden is on the governmental entity to establish its entitlement to an exception. 31 Kan. App. 2d at 925. In this case, the defendants base their claim of immunity on the statutory snow and ice exception. Lopez urges the court to find reason for doubt in the language and history of the exception, but, as already discussed, a sound construction of the exception does not support her position.

Lopez also cites *Holt v. State ex rel. Oklahoma Dep't. of Transp.*, 927 P.2d 57 (Okla. App. 1996). In *Holt*, Okla. Stat. tit. 51, § 155(8) (1996 Supp.) was at issue. Like K.S.A. 2003 Supp. 75-6104(l), it provides that a governmental entity is not liable for damages resulting from "[s]now or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of the state or a political subdivision." See *Holt*, 927 P.2d at 59-60. The driver of an oncoming car lost control on an icy patch on the Keystone Dam and struck the Holts' car head on. It was agreed that the source of the ice on the road was mist formed when water was released through the flood gate of the dam at a time when the temperature was below freezing. The State, which had released the water, was held not to be immune from liability. The Oklahoma Court of Appeals stated: "The purpose of [the snow and ice exception] was to exempt those conditions over which man has no control. In the present case, the moisture necessary for formation of the offending ice was provided by human intervention. That human element removes the present matter from under the umbrella of [the snow and ice exception]." 927 P.2d at 61. Lopez contends that the Oklahoma court held that the exemption applies only to natural weather conditions. In the circumstances of *Holt*, however, the Oklahoma court was distinguishing simply between ice from strictly natural sources and ice formed in cold temperatures from water released by the State. In other words, it was distinguishing between *Taylor*-like conditions, which were strictly natural, and *Draskowich*-like conditions, where the BPU turned the water back on and flooded the roadway. It was not considering conditions such as those in the present case where there is no affirmative human act that supplied the water that turned to ice but the source of the water was the artificial water main rather than a natural one. We find the Court of Appeals' analysis of this third, middle alternative is sound.

We have carefully reviewed the record and briefs of the parties, and we conclude the Court of Appeals was correct. We adopt the opinion of the Court of Appeals and affirm the judgments of the Court of Appeals and the district court.

BEIER, J., not participating.

BRAZIL, S.J., assigned.